UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHNNIE J.,

          Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

---

20-CV-00919-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 15)

Plaintiff Johnnie J.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 11) is granted, defendant's motion (Dkt. No. 13) is denied, and the case is remanded for further administrative proceedings.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed protectively for SSI on November 16, 2016, alleging a disability onset date of November 1, 2015. (Administrative Transcript ["Tr."] 171-72, 183). The application was initially denied on January 13, 2017. (Tr. 78-85). Plaintiff timely filed a request for an administrative hearing. (Tr. 86-89). On April 9, 2019, Administrative Law Judge ("ALJ") Ben Willner held a video hearing from Albuquerque, New Mexico. (Tr. 28-58). Plaintiff appeared in Buffalo, New York with her attorney. A vocational expert also testified. The ALJ issued a decision finding Plaintiff not disabled on May 10, 2019. (Tr. 12-27). On June 10, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). This action followed.

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is

not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.  *The ALJ's Decision*

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 16, 2016, the application date. (Tr. 17). At step two, the ALJ found that Plaintiff had the following severe impairments: history of hepatitis C; kidney disease; gout; osteoarthritis; hypertension; and systemic lupus erythematosus. *Id.* At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17-19). Prior to proceeding to step four, the ALJ determined that Plaintiff retained the RFC "to perform the full range of medium work." (Tr. 19-22). At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. 22). At step five, the ALJ found Plaintiff capable of performing jobs that exist in significant numbers in the national economy. (Tr. 22-23). Accordingly, the ALJ determined that Plaintiff has not been under a disability from November 16, 2016, the date the application was filed. (Tr. 23).

## IV. *Plaintiff's Challenge*

Plaintiff argues, *inter alia*, that the ALJ erred by failing to develop the record with missing rheumatology records. The Court agrees.

"Social Security proceedings are inquisitorial rather that adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]" *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (internal citation omitted). "This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination," *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996), and requires the ALJ to take affirmative steps "where there are deficiencies in the record". *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts*, 94 F.3d 34, 39). "The ALJ's duty to develop the record applies to both *pro se* and represented parties." *Lopez v. Comm'r of Soc. Sec.*, 2018 WL 5634929, at *5 (E.D.N.Y. Oct. 31, 2018). *See also Pulvino v. Berryhill*, 2018 WL 3575315, at *3 (W.D.N.Y. July 24, 2018) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)) ("Even when a claimant is represented by counsel, it is the well-established rule in our circuit 'that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially nonadversarial nature of a benefits proceeding.'"). However, "[w]here there are no obvious gaps in the administrative

record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information." *Rosa*, 168 F.3d at 79 n.5 (quoting *Perez*, 77 F.3d at 48).

In the instant case, Plaintiff had a diagnosis of systemic lupus erythematosus, and the ALJ found that it was a severe impairment. (Tr. 17-19, 276, 282). She reported having arthralgias/muscle aches, swelling, and pain. (Tr. 274, 279, 318). At the hearing, she testified she was diagnosed with lupus in 2012 but her symptoms had worsened since then. (Tr. 41-42). She had "maybe twice a week okay days" and the remaining five days were bad days. (Tr. 42). On those bad days, she had pain and swelling, could hardly move, and mainly lied in bed. (Tr. 42-43). Her pain was mostly in her joints and muscles. (Tr. 43). Pain in her biceps made her arm hurt when raising it, and she had trouble gripping. (Tr. 43, 49). She got swelling in her hands, knees, ankles, and sometimes wrists. (Tr. 45). She treated with rheumatologist Dr. Danilo Saldana for her lupus. (Tr. 40). She had been prescribed medication for her swelling and pain, but she could not remember its name. (Tr. 40). Her medication helped her symptoms "about 70, 75 percent" but she still "ache[d] like mad." (Tr. 41, 47). Her pain flared when she became cold. (Tr. 41).

At the hearing, Plaintiff's counsel stated she had requested records from Dr. Saldana but had not yet received them despite following up with his office. (Tr. 32). Plaintiff's counsel asked for two weeks to submit the records. (Tr. 32). The ALJ advised counsel that he would not reschedule the hearing but would consider the records if they were submitted before he issued a decision. (Tr. 32-33). The records were not submitted after the hearing.

In his decision, the ALJ found that "while the claimant had physical impairments, the longitudinal evidence simply does not support that they are as severe as the claimant alleged." (Tr. 21). He then stated:

> Preliminarily, the record contains extremely scant treatment for her impairments, limited to a few office visits between September 2018 and January 2019 with her primary care physician. While the claimant complained of aching and swelling in her hands, knees, ankles, and wrists, it was consistently noted upon examination that she exhibited normal inspection of her joints and no edema . . . In addition, while the records were not readily available, the claimant testified that she is currently treating with a rheumatologist for her lupus and that he prescribed her a medication, which helps somewhat with the pain.

(Tr. 21).

"Where . . . it is apparent from the face of the record that the record lacks necessary information, the ALJ cannot be relieved of his affirmative obligation to develop the record." *Rodriguez o/b/o C.W. v. Colvin*, 2015 WL 5037014 at *4 (W.D.N.Y. Aug. 25, 2015) (citing *Hilsdorf v. Comm'r of Social Sec.*, 724 F.Supp.2d 330, 346 (E.D.N.Y. 2010)). Here, the missing rheumatologist records constituted an obvious gap in the record, in light of Plaintiff's reported treatment. In fact, the ALJ was notified about the missing rheumatologist records before and at the hearing, and he himself identified the gap in the record. (Tr. 21, 32, 241). Nevertheless, he failed to make any effort to request the records and instead relied on the gap in the record to discount Plaintiff's reported symptoms and limitations. This was improper because "[t]he fact that the essential treatment records were requested, but not received, does not obviate the ALJ's independent duty to develop the record." *Harris v. Berryhill*, 293 F.Supp.3d 365, 369 (W.D.N.Y. 2018). After not hearing from Plaintiff's counsel about the missing rheumatology records, the ALJ should have attempted to obtain the records. *See Davis v. Colvin*, 2016 WL 4708515, at *8 (W.D.N.Y. Sept. 9, 2016) ("Given the significance of the missing records and the impact their

absence had on the ALJ's decision, the ALJ should have tried to obtain the records on his own after not hearing from [the plaintiff's] counsel. By not doing so, the ALJ created a gap in the record that necessitates remand."). His duty to develop was not discharged simply because Plaintiff's hearing counsel stated she would continue to try to obtain them. *See Petersen v. Comm'r of Soc. Sec.*, 2019 WL 2051650, at *4 (W.D.N.Y. May 9, 2019) (finding the ALJ did not fulfill his duty to develop the record by asking the plaintiff's representative to obtain the missing records because he did not attempt to obtain the missing records himself or even follow up with the representative to determine the status of the records requested or warn that a decision would be made without the records); *see also Sotososa v. Colvin*, 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016) ("There is no evidence that the ALJ followed up with Sotososa's counsel or attempted to obtain the missing records himself. The ALJ did not satisfy his duty to develop the record just because he told Sotososa's attorney to obtain the missing records.") (collecting cases).

The ALJ's failure to develop the record with the missing rheumatology records was not harmless because he relied on the absence of the records to discount Plaintiff's reported lupus symptoms and limitations. *See Petersen*, 2019 WL 2051650, at *4 (finding the missing records were important and particularly relevant because "the ALJ relied in part on the absence of evidence to conclude that Petersen's neck pain did not cause extreme limitations."); *Matos v. Berryhill*, 2017 WL 2371395, at *20 (S.D.N.Y. May 5, 2017) (citing *Merriman v. Comm'r of Soc. Sec.*, 2015 WL 5472934, at *23 (S.D.N.Y. Sept. 17, 2015)) ("[The ALJ] did not possess a complete medical history to support his [credibility] findings. Without a [fully] developed record, moreover, the Court cannot conclude whether substantial evidence supported the ALJ's credibility finding."); *see also*

*Kennedy v. Comm'r of Soc. Sec.*, 2019 WL 988889, at *4 (W.D.N.Y. Mar. 1, 2019) (finding remand was warranted where "the ALJ made a number of references in his decision to the lack of evidence in the record, which arguably could be resolved by the missing records.").[3]

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is granted, defendant's motion for judgment on the pleadings (Dkt. No. 13) is denied, and the case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: July 12, 2021
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

---

[3] Plaintiff also argues that the ALJ's RFC determination was not supported by substantial evidence. The defendant should also consider this argument on remand.